## Cook *v.* State

No. 39828          December 5, 1955          83 So. 2d 632

*Wingo & Finch,* Hattiesburg, for appellant.

*Wm. E. Cresswell,* Asst. Atty. Gen., Jackson, for appellee.

Roberds, P. J.

A jury convicted appellant Cook of the murder of Lee G. Felts and fixed his punishment at life imprisonment in the state penitentiary.

Cook urges as his only contention on this appeal that the verdict of guilty was contrary to the great weight of the evidence, and that, therefore, this Court should reverse that verdict and remand the case for

trial by another jury. Cook says he shot and killed Felts in self-defense. The State says he killed Felts by shooting him in the head with a pistol at a time when Cook was in no danger, real or apparent, of suffering death or great bodily harm at the hands of Felts. The jury found for the State and the question is whether that finding is supported by the testimony.

The evidence upon some of the important facts is not in dispute. The tragedy took place at Pastime Grill located near the junction of Northside Drive with Highway 49 about, or near, the north municipal limits of the City of Jackson, Mississippi, between seven and seven thirty o'clock on the morning of June 16, 1954. The Pastime served drinks, including whiskey, and afforded a convenient and enticing place for gambling. When the shooting occurred the only persons in the Grill were Paul Littlefield, Jay Tucker, Lee G. Felts and appellant Cook. Littlefield was in charge of and operating the Grill. Tucker, Cook and Felts, in the order stated, but separately, came into the Grill at different times, from three to four o'clock in the morning. Felts, the last man to appear, had upon his person a considerable sum of money, which he was carrying in a small sack. He also had a pistol. He explained to Littlefield, in the presence of Cook and Tucker, that he had taken in the money from the operation that night of a gasoline station which he owned entirely or partly, and that he was carrying the pistol because of his possession of the money. He placed the pistol on a shelf underneath the drink counter. Apparently he also placed the sack containing the money on this same shelf.

Cook, Felts and Tucker immediately began to drink whiskey. Some of it they owned privately; some of it was purchased from the Grill. Littlefield did not engage in the drinking. But all four did engage in gambling by shooting dice. This drinking and gambling continued until around seven to seven thirty in the morning.

We now come to the scene of the fatal shooting. We will set out in substance the testimony bearing upon the pertinent and controlling facts.

Littlefield was placed upon the stand by the State. He said all four parties came from the back room of the Grill, where they had been shooting dice, into the front room in which the serving counter was located. He was ready to close the Grill. Cook, Felts and Tucker were at, or near, the counter drinking whiskey. Cook got Felts' pistol from the shelf under the counter. He pointed the pistol at Littlefield. Cook claimed that he and Felts and Littlefield, before the gambling started, had agreed upon a plan to fleece Tucker of his money in the dice game, and that they had succeeded in doing that to the amount of $150.00, but that he, Cook, had been paid by the other two only $23.00, and that Littlefield and Felts owed him $27.00. He was using the pistol as a slight inducement to collect that $27.00 from Felts and Littlefield. He told Littlefield he wanted his money "and I want it fast". Littlefield denied he owed Cook any money but upon looking down the barrel of the pistol he lost no time in producing from his pocket and placing upon the counter thirty dollars in bills. At this juncture Felts, who was standing close by, said to Cook "you ought not to put a pistol on anybody unless you cocked it", and Felts also remarked "He's too yellow to pull that trigger"; whereupon Cook grabbed Felts around the neck with his left arm, pulling his head down, and shot him in the top of the head with the pistol. There were at least two shots but one of them missed Felts and went through the left wrist of Cook as his left arm was around the neck of Felts. Littlefield was not sure whether there was a third shot. Felts slumped to the floor. Witness ran across the street and informed a man by name of Baker that Cook had shot Felts. Baker called the police. As Littlefield came back to Pastime he met Cook and Tucker outside the build-

ing going to Tucker's automobile parked near the Grill. Littlefield said to Cook that he, instead of Felts, was the one who should have been shot. Cook yet had Felts' pistol. Cook, after shooting Felts, had gathered up the thirty dollars Littlefield had placed upon the counter. Littlefield testified that Felts had no weapon of any kind and that Cook was in no danger whatever, real or apparent, of suffering great bodily harm, or death, at the hands of Felts. In other words, according to the testimony of Littlefield, Cook shot and killed Felts in cold blood.

Tucker was placed upon the witness stand by Cook. He explained the arrival of the parties, and said that "shortly after Mr. Cook came in * * * we started rolling high dice". All were gambling. He said he did not know Cook or Felts. He confirmed Littlefield's statements that Felts placed his money bag and pistol on the shelf under the counter. In fact, he said that was done at his suggestion. Most of the gambling was in the back room. "It was rolling dice, high dice, out of a cup." He lost money and he got Cook to cash a check for him. Coming to the front room scene, where the shooting occurred, he testified that Cook said "Some s. b. owes me $25.00 and I want my money". Felts applied the same description to Cook and then said " * * if you are talking about me try and get it". Littlefield said he did not owe any one any money but that Cook could have it, then while producing the bills and placing them upon the counter. At this point Cook obtained possession of Felts' pistol. He testified that Cook "lowered the pistol, he said to Mr. Felts 'why don't you pay me my $25.00', or words to that effect". Felts replied "I told you to try and get it". Felts further said "You have got to cock that thing before you shoot it", and Cook said he knew how to shoot a gun. Felts then "advanced on Cook" and they "grappled" and a "tussle ensued", and Cook "brought the gun down in this manner and

fired''. Further describing what happened this witness said ''they were tussling at the time the first shot was fired''. He further said ''Mr. Cook was standing there with the gun in his hand, and Mr. Felts advanced on him in what we might term a belligerent manner''. Felts had no weapon of any kind. Three shots were fired by Cook. Felts did not fall until after the second shot was fired. When Felts slumped to the floor the witness said he remarked ''Mr. Cook, you have done played hell''. He then said to Cook ''I will bid you good day'', and started to leave. Cook still had Felts' pistol in his hand and said to Tucker ''I am going with you''. Witness said '' * * I didn't argue with Mr. Cook as to whether I was going with him or not''. Cook and Tucker got into Tucker's automobile, and Cook, using Felts' pistol, forced Tucker to drive to the Steak House on U. S. Highway 51, located near the line between Madison and Hinds Counties, Mississippi. Cook was the caretaker of the Steak House. They went into the Steak House. Cook telephoned someone and told him he had shot a man and had to have some money and apparently got permission to get it at the Steak House, which Cook did. Cook also got a rifle from the Steak House, which he said was his property. Cook had told Tucker they were going to Louisville, Kentucky, but as they drove north on Highway 51, Cook changed his mind and before arriving at Canton, Cook told Tucker to drive west towards Bentonia, which Tucker did, and they arrived at Highway 49. They drove to a tourist court, where Tucker undertook to dress the wound in Cook's wrist, and then they traveled south on Highway 49. A short distance south of Flora they were stopped and arrested by two patrolmen, who were on the watch for them, having heard the broadcast of the crime and description of the Tucker automobile. The patrolmen informed them that Felts was shot and Cook remarked that he had ''played hell.'' The patrolmen took from Cook the rifle and the

Felts pistol, carried Cook and Tucker to Jackson and delivered them to the Sheriff of Hinds County. It should be stated, in fairness to Tucker, that the use of the Tucker car and Tucker's driving of it, were the result of Cook's theatening of Tucker by the use of the Felts pistol.

Cook testified. He was employed as keeper of the Steak House and slept there. He confirmed the arrival of the three parties at the Grill; the drinking and gambling. He said he and Felts and Littlefield agreed upon a plan to fleece Tucker in the gambling game and that they succeeded to the extent of $150.00; that he had been paid $23.00 of his part and was entitled to $27.00 more; admitted he procured Felts' pistol from the shelf under the counter and demanded payment of his part of the winnings from Tucker. He said when he demanded his part of the winnings that Felts said'' * * if you are short any you sure as hell ain't going to get it from me.'' Cook admitted that when he was demanding his part of the gambling loot that he first had the Felts' pistol drawn on Littlefield. Littlefield pitched out the thirty dollars in bills. He said he then covered "both Littlefield and Felts with the pistol." Felts said "Fat Boy, you better be sure that thing is cocked", and Cook replied "I know how to shoot a pistol." He heard a door slam and he turned to see if someone was coming into the Grill "and when I did, something hit me in the head and knocked my hat off. I wear a hat all the time, and I saw this object coming at me again, and when I saw this object coming at me a second time, I threw my arm up in this manner and I fired at this object. When I fired at the object the bullet went through my wrist." Then he said "After firing the pistol the first time and the bullet went through my wrist, Sonny (Felts) came charging at me like a wild bull. He just kept coming, digging right in, and I fired again, hoping that perhaps it would stop him, and the third time I

fired, I fired directly at his head * * *." He again said that he fired the first shot at the phantom object; the second time he fired to scare Felts, and the third time he fired directly into Felts' head. He repeated a number of times that he fired one shot at the "object." He was pressed to describe this object and finally said "I believe it was either a chain or a bottle." He further testified "When I looked over to my right when the door slammed, that's when he must have obtained whatever the object was that he hit me with." Again, "and when I heard the door slam, I turned around and looked to my right, and when I did, I felt something knock my hat off, and when it knocked my hat off I turned back around and saw the object coming at me again and automatically reached up and took the pistol out of my hand and fired it at the object. When I fired at the object I hit my wrist." He and Tucker went out. He used the pistol to make Tucker drive him in Tucker's car to the Steak House. There he telephoned the owner of the Steak House and got permission to procure some money from the Steak House, which he did. He also took possession of his own rifle at the Steak House. He then ordered Tucker to drive north, intending to go to Louisville, Kentucky. However, he changed his mind and before reaching Canton had Tucker drive west to Highway 49. He confirmed, in substance, Tucker's testimony of their arrest by the patrolmen and delivery by the patrolmen to the Sheriff of Hinds County. He admitted he had been convicted of a number of criminal offenses.

R. C. Thomas testified that he was Deputy Sheriff of Hinds County; that Baker telephoned him that the shooting had occurred; he notified city police, giving a description of the Tucker car. He knew Cook worked at the Steak House. He went there. The Steak House had been broken into; a 30-caliber rifle had been taken; patrolmen delivered Cook to him; and patrolmen de-

livered to him the Felts' 38-pistol and the 30-rifle. There were three empty shells in the pistol. Cook was carried to the hospital because of the wound in his wrist.

Dr. Charles Neill was a neurologist specialist. He examined Felts when he got to the hospital. His brain was exuding from a wound on the right of the middle line of his head. He was in a coma, was in no condition to be operated upon nor for taking X-ray pictures. He died at 10:17 that morning. The scalp was burned where the pistol bullet entered Felts' head.

Snodgrass was a highway patrolman. He lived at Canton and was at home when he heard the broadcast of the crime, description of the automobile, etc. He and Chance were the patrolmen who arrested Cook and Tucker a short distance south of Flora on Highway 49. Cook had Felts' pistol and the rifle. This arrest was around nine o'clock in the morning. When they informed Cook that Felts was in a serious condition, Cook replied ''Boys, I played hell.'' Witness delivered Cook and Tucker to the Hinds County officials.

Dr. Robert T. Gates examined Cook when he was carried to St. Dominics Hospital. That was about eleven o'clock in the morning. A bullet had entered the front and come out the back of his left wrist. Cook also had a small bruise on his head. He made an X-ray and there was no fracture of the skull. The wound was close to the top of the skin. It was not a deep cut. It was very superficial. It could have been made in a number of ways—such as the use of a blunt instrument; by a fist if the lick had been hard enough, or by Cook's bumping his head against an automobile top or some other object.

Mrs. Lee G. Felts testified. She is the widow of the decedent. They lived in Jackson, Mississippi. Mr. Felts was the owner, or had an interest, in a gasoline station in Jackson, and perhaps in some other types of businesses. Felts worked until four to four thirty in the

morning at the gas station. It was his custom to bring home the money he had taken in from the operation of the gas service station. He usually got home from four thirty to six o'clock in the morning and slept late. They had three children. She was notified over the telephone that Felts had been shot. He never regained consciousness.

It will be seen immediately that there was no proof that Felts had in his possession when he was shot any weapon of any kind. The testimony of Littlefield and of Tucker, the only eye-witnesses except Cook, is to the effect that he did not have any weapon. No one claims that he did have except such an inference may be drawn from Cook's testimony. When pressed to name the object, the best he could do was to say "I believe it was either a chain or a bottle." There is no testimony that a chain, or bottle, or any other object, or instrument, was found upon Felts, or for that matter, near his body after he was shot. The most that can be said from this testimony is that Tucker and Cook testified that when Cook pointed this pistol at Felts, that Felts "rushed upon" Cook.

The main argument of Cook here is that he was shot through the left wrist. We have not been able to grasp, to the extent urged by Cook, the force of this argument in support of his defense. If he had his left arm around the neck of Felts and was shooting the pistol with his right hand, it is easily seen that he might have shot through his left wrist. The wrist wound carries much more force in favor of the theory of the State than that of the appellant.

We think it unnecessary to belabor the point more. It is perfectly obvious, we think, that it was for the jury to say whether at the time Cook shot Felts that he, Cook, was in imminent danger of suffering death or great bodily harm at the hands of Felts. Indeed, the evidence that he was not in such danger is much stronger than

that he was in such danger. We think the verdict of the jury was not only justified but was clearly correct.

Affirmed.

*Hall, Lee, Ethridge, Gillespie, JJ.,* Concur.